IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 11-251 |
| ) | |
| JAMES DONIS ) | |

## MEMORANDUM AND ORDER OF COURT

On October 15, 2012, defendant James Donis ("defendant") changed his plea to guilty to Count Two of the Indictment in this case charging him with falsification of a document in violation of 18 U.S.C. §1519. On February 20, 2013, this court sentenced defendant to a five-year term of probation with a number of conditions, including a requirement that he reside at the Renewal Center in Pittsburgh, Pennsylvania for eight months, during which period he would be required to remain at the facility at all times except for activities approved in advance by the probation officer. See Additional Probation Terms, Condition No. 7, which is set forth in this court's Judgment Order dated February 20, 2013 (Document No. 61, at 3).

The court subsequently was advised that even if the Federal Bureau of Prisons ("BOP"), which contracts with the Renewal Center, referred defendant to that facility, the Renewal Center was inclined to refuse his placement there for reasons articulated at two status conferences held on February 28, 2013, and on March 13, 2013. First, Renewal Center officials had general safety

concerns regarding defendant's placement because over 150 residents currently housed at Renewal formerly were inmates at the Allegheny County Jail, where defendant had been employed as a corrections officer. Another concern involved defendant's previous working relationship with Renewal Center personnel, thus raising a potential conflict of interest regarding his supervision while at Renewal. Finally, pursuant to Renewal Center policy, defendant would not be permitted to work at his current position managing his wife's restaurant/tavern in suburban Pittsburgh.

At the status conferences, it was brought to the court's attention that the BOP contracts with a facility similar to the Renewal Center called Community Corrections Association, Inc., which is located in Youngstown, Ohio (hereinafter, "CCA Youngstown"). It was noted that CCA Youngstown might accept defendant's placement, but there was a question whether he would be permitted to work at the family-owned business. At the second status conference, defendant's counsel read a letter written by defendant in which he expressed concern about whether he would be permitted to work in the family-owned business regardless of which facility accepted his placement.

As a result of the Renewal Center's stated inclination to refuse defendant's placement at the facility, and in view of the need to find a reasonable alternative which would achieve the purpose of the sentence imposed upon defendant, the court held a probation modification hearing on March 20, 2013.

Douglas Williams, who is the president and chief executive

officer of the Renewal Center, testified at the hearing and confirmed that the Renewal Center would reject defendant's placement for the reasons previously explained to the court.

Dave Stillwagon, who is a supervisor at CCA Youngstown, testified that the facility would accept defendant's placement, but he would not be permitted to work at the family-owned business. Mr. Stillwagon explained that the BOP's statement of work policy, which applies at CCA Youngstown, provides that an individual ordinarily is not permitted to work in a family-owned business because of accountability concerns. According to Mr. Stillwagon, no federal detainee housed at CCA Youngstown has been granted permission to work for a family member. However, if placed at CCA Youngstown, defendant would be permitted to look for other suitable employment in the Western District of Pennsylvania.

Pamela Butler, a BOP representative, testified that the BOP's statement of work policy applies to its contract with CCA Youngstown, and that an individual ordinarily is not permitted to work in a family-owned business. Defense counsel asked Ms. Butler if use of the word "ordinarily" means there is an exception to this policy. Ms. Butler testified that the BOP reviewed the available information concerning defendant's work in the family-owned business, and concluded it is not acceptable employment from an accountability standpoint because there is no manager or supervisor who would oversee defendant at work.

After hearing testimony and considering the arguments of counsel, the court determined that it was reasonable to modify the

condition of defendant's probation requiring that he reside at the Renewal Center for eight months to require instead that he reside at CCA Youngstown for that same amount of time. The court stated on the record its reasons for the modification, but writes separately to amplify several points regarding this matter.

According to 18 U.S.C. §3563(c), "[t]he court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation." The Third Circuit Court of Appeals has held that district courts possess broad discretionary authority to modify the terms and conditions of supervision and modifications are reviewed only for reasonablesness. United States v. Wilson, ___ F.3d ___, 2013 WL 540234, *3 (3d Cir. 2013). In accordance with Federal Rule of Criminal Procedure 32.1(c)(1), before modifying the conditions of probation, the district court must afford the defendant a hearing, except in certain circumstances not relevant here.

In this case, defendant received a hearing in accordance with Rule 32.1(c)(1). It was established at the hearing that the Renewal Center would refuse defendant's placement there, but CCA Youngstown would accept his placement at that facility. Pursuant to the BOP's statement of work policy, which applies at CCA Youngstown, defendant would not be permitted to work at the

family-owned business in suburban Pittsburgh. However, while defendant is a resident at CCA Youngstown, he would be permitted to look for other suitable employment in the Western District of Pennsylvania.

Faced with the circumstance which arose post-sentencing that the Renewal Center would refuse defendant's placement, and after considering the evidence received at the probation modification hearing, the court concluded that requiring defendant to reside at CCA Youngstown is a reasonable modification of the terms of his probation because it achieves the purpose of the sentence imposed by this court. As the court previously explained at the sentencing hearing, a sentence of five years probation with a condition of residence at a community confinement center for a period of eight months is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a). The court considered defendant's history and characteristics and the nature and circumstances of the offense, and noted that although defendant committed a serious offense, it appeared his conduct in this case was aberrant. The court stated that the purpose of the sentence was to promote respect for the law and demonstrate that no one is above the law. In that regard, the court considered the possibility of home detention as a condition of probation, but concluded that requiring defendant to reside at a community confinement center was more appropriate based on the nature of the offense and the objective of promoting respect for the law.

Defendant's counsel argued at the probation modification hearing that it is unreasonable for defendant to be prohibited from working in the family-owned business during his placement at CCA Youngstown. As the court stated at sentencing and repeated at the modification hearing, defendant may be permitted to work consistent with the policies of the facility where he is placed. To be clear, ensuring that defendant is able to work during his placement at a community confinement center was not an object of the court's sentence; rather, it was to promote respect for the law.

In sum, the court concludes that the modification of defendant's probation to require that he shall reside at CCA Youngstown for eight months is a reasonable modification which achieves the purpose of this court's sentence.

An appropriate order will follow.

O R D E R

AND NOW, this 26th day of March, 2013, for the reasons stated on the record at the probation modification hearing held on March 20, 2013, and for reasons explained in the memorandum above, IT IS ORDERED that Additional Probation Term No. 7 set forth in the Judgment Order of February 20, 2013, be, and the same hereby is, modified to require that defendant shall reside at the Community Corrections Association, Inc. in Youngstown, Ohio ("CCA Youngstown") for a period of eight (8) months, and that he shall

remain at CCA Youngstown at all times except for activities approved in advance by the probation officer. All other terms and conditions of the February 20, 2013, Judgment Order remain the same as originally imposed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Amy Johnston
 Assistant U.S. Attorney

 Charles J. Porter, Esq.
 200 Koppers Building
 436 Seventh Avenue
 Pittsburgh, PA 15219

 Federal Bureau of Prisons
 United States Marshal
 United States Probation